641 A.2d 870

**Elan OUTMEZGUINE**

v.

**STATE of Maryland.**

**No. 112, Sept. Term, 1993.**

Court of Appeals of Maryland.

June 3, 1994.

Martha Weisheit, Asst. Public Defender (Stephen E. Harris, Public Defender, both on brief), Baltimore, for petitioner.

George E. Simms, III, Sp. Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ., and

CHARLES E. ORTH, Jr.*, Judge (retired), Specially Assigned.

MURPHY, Chief Judge.

This case implicates Maryland's child pornography laws. More particularly, it involves the indictment of Elan Outmezguine for "unlawfully photograph[ing] Jennifer [H.] (date of birth February 20, 1975), a minor, engaging in sexual conduct" in violation of Maryland Code (1957, 1992 Repl.Vol.) Art. 27, § 419A(c).[1] This subsection reads:

> "Every person who photographs or films a minor engaging in an obscene act or engaging in sexual conduct as defined in § 416A of this article is subject to the penalty provided in subsection (e) of this section."

A "minor" is defined in § 419A(a) as "an individual under 18 years of age." Section 416A(d) defines "sexual conduct" to mean "human masturbation, sexual intercourse, or any touching of or contact with genitals, pubic areas or buttocks of the human male or female, or the breasts of the female, whether alone or between members of the same or opposite sex, or between humans and animals." Section 419A(e)(1) makes a violation of subsection (c) a felony punishable by a fine of not more than $25,000 or imprisonment for ten years or both in the discretion of the court.

Outmezguine was convicted by a jury of the offense charged in the indictment; he was sentenced to eight years imprisonment. The judgment was affirmed on appeal. *Outmezguine v. State,* 97 Md.App. 151, 627 A.2d 541 (1993). We granted Outmezguine's certiorari petition to consider whether "scienter [is] an element of the offense of photographing a minor" under § 419A(c). We also granted the State's conditional cross-petition presenting the question whether Outmezguine

---

* Orth, J., retired, and specially assigned, participated in the hearing of this case but died prior to the adoption and filing of this opinion.

1. All subsequent references to code sections are to Article 27 of the Maryland Code unless otherwise indicated.

"waived his right to appellate review on the issue of a reasonable mistake of age defense."

## I

Jennifer H. was a troubled youth. She began using alcohol when she was nine years old and drugs when she was 14. In December of 1990, when she was 15 years old and a student at Wootton High School, she was using cocaine and was admittedly sexually promiscuous. Other than these facts, the testimony adduced at trial painted two markedly different pictures of the facts and circumstances giving rise to this case.

According to Outmezguine, he was in the home improvement and cleaning business in 1990. Photography was one of his hobbies and he occasionally took pictures of professional dancers and models for money. In December of 1990, he stated that he was driving to work when he observed Jennifer hitchhiking.[2] Outmezguine testified that he stopped to give her a ride and that she accompanied him to his workplace where she assisted with that evening's cleaning in return for some money. He dropped her off after work around midnight and Jennifer asked him if she could help out with cleaning jobs in the future. He gave her his business card and pager number and she gave him her phone number.[3]

Outmezguine said that Jennifer called him approximately two days later and asked if he had any cleaning work for her to do. He needed help so he picked her up the following day for a cleaning job.[4] During the day, she asked him whether

---

2. An employee of Outmezguine's, George Hyde, testified that he was with Outmezguine on this occasion.

3. Jennifer maintained that she never worked for Outmezguine in any type of cleaning business.

4. Outmezguine and George Hyde each testified that Jennifer assisted with cleaning jobs on three or four occasions. On one of these occasions, Outmezguine said that she saw a photo album in his van that contained pictures of women, some of whom were nude. According to Outmezguine, she then stated that she had always been interested in modeling and photography.

he had any work for her boyfriend and Outmezguine informed her that he could use an extra man. Shortly thereafter, Jennifer's boyfriend, identified only as "R.C.," Jennifer, Outmezguine, and George Hyde worked on a small job.

According to Outmezguine, the next day R.C. and Jennifer went to Outmezguine's house. Outmezguine stated that Jennifer asked him to show R.C. the album that contained the pictures of nude women. After seeing the album, R.C. asked Jennifer to pose for him. Outmezguine gave Jennifer some of his sister's lingerie and permitted R.C. to use his camera and equipment to take pictures of Jennifer.[5] Outmezguine continually denied taking any pictures of Jennifer.

According to Jennifer, Outmezguine initially called her at home, informed her that he knew Jennifer's twin sister, and asked her to pose for some photographs for which she would receive $150. On the telephone, he assured her that she would not have to pose nude. Jennifer agreed, and on December 21, 1990, he picked her up, purchased some wine coolers at a liquor store, and took her to his house, where she consumed some of the wine coolers. He began taking pictures of her in various items of clothing—*i.e.*, underwear, lingerie, and stockings. Jennifer said that Outmezguine supplied some of the clothing while she brought other items with her. One particular piece of clothing which he asked her to wear was a pair of panties, which contained a hole exposing her vagina.

Jennifer testified that Outmezguine instructed her in various poses and took a series of photographs, which she later identified in court. In describing one of the more graphic pictures, she stated that Outmezguine "told [her] to pull back one of [her] vagina lips" and "told [her] to open up [her] vagina." She returned to pose twice more in January of 1991, one time with a girlfriend, Elizabeth Sandell. Jennifer stated

---

5. Carol Norwood, Outmezguine's ex-girlfriend, testified that she arrived at Outmezguine's home one day and saw a young man taking pictures of two young women dressed in lingerie; one of these women was later identified to be Jennifer. George Hyde also stated that another man, and not Outmezguine, took pictures of Jennifer.

that she had various forms of sexual relations with Outmezguine on "at least six [or] seven [occasions]," sometimes at his home, other times in his automobile.[6] According to Jennifer, Outmezguine promised her money and drugs in return for the posing and sex but never actually provided her with money or drugs.

Jennifer's mother expressed concern about Jennifer and the lifestyle she was leading. She noticed that Jennifer was having increasing difficulties from January of 1990 until January of 1991. Her mother observed that Jennifer's grades were declining and that she was periodically staying out very late at night, sometimes staying out the entire night. One day, she read Jennifer's diary and realized the depth of Jennifer's problems. Accordingly, she placed Jennifer in an inpatient treatment program for drug and alcohol abuse.

During a counselling session, Jennifer mentioned the series of events that had occurred with Outmezguine. The counsellor informed the police, who obtained a search warrant for Outmezguine's house. During the execution of the warrant, the police discovered cameras, lingerie, and a suitcase that contained, among other things, loose photographs and an album with photographs in it. Jennifer was depicted in many of these photographs and she testified that these were taken by Outmezguine at his home. Many of the other women pictured in the photographs were wearing the same lingerie that Jennifer was wearing in her pictures. In some of the pictures, Jennifer is touching her bare breasts or buttocks. In one picture, she is spreading apart her vagina, which she claimed Outmezguine instructed her to do. Jennifer and her friend, Elizabeth Sandell, age unknown, are depicted in other pictures, which appear to be relatively innocuous when compared to the pictures taken of Jennifer when she was alone. Sandell was not called to testify by either the State or Outmezguine.

---

6. Outmezguine, on the other hand, maintained that he never had sexual relations with Jennifer.

Based upon the foregoing information and evidence, the State arrested Outmezguine and charged him with, *inter alia,* violating § 419A(c). On March 20, 1992, Outmezguine moved to dismiss the indictment alleging that the child pornography statute was unconstitutionally vague and overbroad. He also maintained that the allegations in the indictment were not set forth with sufficient specificity and for that reason the charge should be dismissed. The court denied the motion to dismiss.

During the two day trial in late August of 1992, Outmezguine's primary defense was that he was not the person who took the pictures of Jennifer. He also maintained that he never knew Jennifer's age. He never stated, however, that he believed Jennifer to be 18 years of age or older. During the State's rebuttal, Jennifer stated that she had told Outmezguine her age and that she was a high school student.

At the close of the State's case-in-chief, Outmezguine moved for a judgment of acquittal, arguing that a defendant must have knowledge of the minor's age to be convicted under § 419A(c), and that the indictment failed to allege that Outmezguine knew Jennifer was under 18 years of age. The State averred that knowledge of the minor's age was not an element of the crime under § 419A(c). The court agreed with the State and denied Outmezguine's motion.

At the end of the case, Outmezguine again moved for a judgment of acquittal, which was denied. Outmezguine submitted four proposed jury instructions, all of which centered on the requirement for and definition of "knowledge."[7] Al-

---

7. The four proposed instructions were these:

(1) "The word 'knowingly' as used in a criminal statute, generally speaking, means that state of mind which exists when the accused person is in possession of facts under which he is aware he cannot lawfully do a particular act, but nevertheless proceeds to do it.

"The word 'scienter' is also sometimes used synonymously with knowledge."

(2) "All the acts described in this Section are made criminal only if they are committed knowingly."

(3) "Scienter or knowledge must be proven by the State."

(4) "Knowingly means having knowledge of the character and content of the subject matter."

though these proposed instructions did not specifically state that a defendant must have "knowledge" of the minor's age before convicting him under § 419A(c), the reasonable inference is that that was what Outmezguine was requesting.[8] The court, however, concluded that knowledge of the minor's age was not an element of the crime and therefore did not instruct the jury with regard to a scienter element. Rather, the court instructed the jury as follows:

"In this case the defendant is charged with photographing a minor engaged in sexual conduct. A minor is defined as any person under 18 years of age. Sexual conduct means human masturbation, sexual intercourse or any touching of or contact with the genitals, pubic areas or buttocks of a human male or female or the breasts of the female whether alone or between members of the same or opposite sex or between human[s] and animals."

During deliberations, the jury sent a note to the judge, inquiring whether under § 419A(c), the defendant is required to have knowledge of the child's age. The court answered in the negative that he need not know the child's age to be convicted. This note, however, is not included in the record. The only reference to the note is the following comment and objection by defense counsel.

"There was a note that was delivered and the Court answered the note. Both answers were no in regards to whether the defendant need know about the child, whether the child be 18, and did he need to know. As I indicated, I thought that both answers should be answered yes. [The State] thought no. Your Honor said no. I take exception to that note, okay, the answers to the note."

Acting upon these instructions, the jury convicted Outmezguine of photographing a minor engaging in sexual conduct

---

8. From the brief discussion on the motion for acquittal at the end of the State's case, it can be reasonably assumed that he was in fact arguing that knowledge of the child's minority is an element of the offense. *See Outmezguine, supra,* 97 Md.App. at 155–56, 627 A.2d 541.

under § 419A(c). The jury necessarily believed Jennifer's version of the facts and did not believe Outmezguine.

In affirming Outmezguine's conviction, the intermediate appellate court said that the issue before it was "whether, to convict appellant under § 419A(c), the State must prove that he had knowledge that Jennifer was under 18 when the photographs were taken." *Outmezguine, supra,* 97 Md.App. at 156, 627 A.2d 541. It first noted that § 419A, in addition to subsection (c) proscribing photographing or filming a minor engaging in sexual conduct, also contained subsections (b) and (d). As to subsection (b), the court stated that it "makes it unlawful for a person to solicit, cause, induce, or *knowingly* permit a minor to engage as a subject in the production of [any] obscene matter or [any] visual representation or performance that depicts a minor engaged as a subject in sexual conduct." *Id.* at 154, 627 A.2d 541 (emphasis in original). "Subsection (d) makes it unlawful for a person *knowingly* to promote, distribute, or possess with intent to distribute any matter or [other] visual representation or performance that depicts a minor engaged as a subject in sexual conduct." *Id.* at 155, 627 A.2d 541 (emphasis in original). The court pointed out that the word "knowingly" appears in subsections (b) and (d), but not in (c).

The court traced the history of Maryland's child pornography statute from its enactment in 1978 to its current form today. As of 1978, it was a crime under § 419A to solicit, cause, induce, or knowingly permit a person under 16 to engage as a subject in the production of obscene matter or to photograph or film a person under 16 engaged in an obscene act. The court noted that there was "no express requirement that the perpetrator know that the child was under 16." *Id.* at 162, 627 A.2d 541. The court also found it noteworthy that when the Legislature enacted the first child pornography statute in 1978, it omitted a scienter requirement even though many of the proposed bills provided such a requirement. *Id.*

The court then discussed a number of amendments enacted over the years and focused in particular on the last significant

change to § 419A, which occurred in 1989. With regard to this amendment, it stated:

"Although an inference could perhaps be drawn from [the 1989 amendment] that the Legislature intended for mistake as to the victim's age to be an affirmative defense, no fair inference could be drawn that it intended knowledge of the victim's age to be an element of the offense."

*Id.* at 166, 627 A.2d 541.

The court then concluded that, in light of the legislative history and the plain language of the statute, "the Legislature did not intend to make knowledge as to the age of the child an element of the offense, to be affirmatively proved by the State." *Id.* It observed that if the Legislature intended knowledge to be an element of the offense under § 419A(c), it would have provided appropriate language in § 419A(c) as it did in § 420, which explicitly makes it a crime for an individual, "with knowledge that a person is a minor under 18 years of age," to employ the minor to assist in displaying or distributing obscene materials. *Id.* at 166–67, 627 A.2d 541.

Therefore, the court held that the circuit court's denial of Outmezguine's proposed jury instructions and its response to the jury's note were not in error. The court declined to consider whether mistake of age can be offered as an affirmative defense because Outmezguine failed to raise the issue at trial. Specifically, the court said: "although [Outmezguine] claimed that he did not know that Jennifer was 15, he offered no evidence as to what he thought her age was at the time or that he did not know she was under 18." *Id.* at 167, 627 A.2d 541.

## II

Before us, Outmezguine reasserts his view that scienter is an element of the offense of photographing a minor engaging in an obscene act or sexual conduct under § 419A(c). He argues that if scienter is not an element of the crime, then § 419A(c) operates as a strict liability offense, which raises questions as to the statute's constitutionality under the First

Amendment. It is Outmezguine's position that the Supreme Court requires an element of scienter in child pornography statutes.

Outmezguine's First Amendment challenge appears to focus on the argument that a photographer may decide not to take pictures of adults engaging in nonobscene sexually explicit conduct because of a fear that a minor, posing as an adult, is the subject of the photographs. Hence, he claims that a construction of § 419A(c) as a strict liability offense, or a construction that does not provide a defendant with a mistake of age defense, would have a chilling effect on those who engage in photographing and filming nonobscene adult pornographic conduct.

Outmezguine points to three of our prior decisions where we read a scienter requirement into a statute. Those cases involved possessing a controlled dangerous substance, driving with a suspended license, and carrying a concealed dangerous weapon. Outmezguine argues that we should similarly impose a knowledge requirement in § 419A(c). He contends that strict liability, or public welfare, offenses are reserved only for crimes which impose light fines or penalties. It is argued that because § 419A(c) allows up to ten years imprisonment, we should construe the statute to include knowledge of the minor's age as an element.

Outmezguine further asserts that the legislative history of § 419A confirms his belief that the Legislature did not intend to make this offense a strict liability crime. In particular, he points to the 1989 amendments to the statute. As originally introduced, the 1989 bill included a provision that stated "[a] mistake of age is not a defense to a prosecution under this section"; however, this provision was ultimately stricken from the bill. From this legislative history, Outmezguine concludes that it is clear that the Legislature expressly rejected an opportunity to make § 419A(c) a strict liability offense.

In the alternative, Outmezguine avers that if the Legislature did not intend to make knowledge of the minor's age an element of the crime, it surely intended to make a reasonable

mistake of age available as an affirmative defense. He says that if we recognize a mistake of age defense to a prosecution under § 419A(c), then "simple logic" dictates that scienter must be an element of the crime. Moreover, he observes that generally a defense of mistake of fact is only relevant to negate the *mens rea* of a crime. Outmezguine therefore concludes that mistake of age is only relevant in a prosecution under § 419A(c) if knowledge of the child's minority is an element of the crime. He further contends that, if we recognize a mistake of age defense, we would be in actuality creating a rebuttable presumption with respect to the element of scienter. As to this, Outmezguine maintains that requiring a defendant to assert mistake of age as a matter of defense, instead of requiring the State to prove scienter as part of its *prima facie* case, raises questions as to the statute's constitutionality under the Due Process Clause. To avoid this constitutional dilemma, he urges us to create a less onerous form of scienter such as recklessness or negligence rather than placing the affirmative burden on the defendant.

Finally, Outmezguine argues that the Court of Special Appeals improperly determined that he waived his right to appellate review on the issue of a reasonable mistake of age defense. He asserts that once the trial judge construed § 419A(c) as not containing a knowledge element, any evidence offered as to mistake of age would have been irrelevant and inadmissible.

The State contends that the plain language and legislative history of § 419A(c) clearly indicate that the prosecution is not required to prove scienter as to the age of the minor. In particular, it notes that § 419A(d) contains a prohibition against "knowingly" promoting, distributing, or possessing with intent to distribute child pornography, while § 419A(c), involving photographers and filmmakers of child pornography, does not include a similar knowledge requirement. The State argues that the Legislature purposely omitted a knowledge requirement as to the minority of the child when a photographer of child pornography was involved, whereas with a distributor, the Legislature deliberately required knowledge

as to the minor's age. It maintains that the Legislature recognized a distinction between photographers of child pornography and distributors of child pornography; thus, it is the State's position that, as to the former, the Legislature did not require scienter as to age because photographers are in a position to know or discover the ages of their subjects.

The State also claims that the Legislature in 1978, when the first child pornography statute was enacted, had before it a variety of child pornography bills, some of which contained scienter as an element of the crime. But, it says, in the end the Legislature chose to enact a bill that did not include a requirement that the photographer have knowledge of the child's minority. From this, the State concludes that the Legislature considered and weighed the merits of imposing or not imposing a requirement of scienter and consciously decided not to include such a requirement.

The State observes that wide latitude is generally afforded to the Legislature to define offenses and exclude elements of knowledge from those definitions. In addition, it contends that the crime of child pornography is significantly different than the types of offenses where we have read a scienter requirement into a statute. Specifically, it is argued that § 419A(c) was designed to protect minors from sexual exploitation and is therefore similar to statutory rape which does not require proof of scienter as to age.

The State asserts that the legislative history of the 1989 amendment to § 419A, which eliminated a proposed provision that stated "[a] mistake of age is not a defense to a prosecution under this section," does not establish that the Legislature intended to make mistake of age available as a defense. Rather, it argues that this language may have been removed because subsections (b) and (d) of § 419A already contained knowledge requirements and therefore the newly proposed language would have contradicted those subsections.

According to the State, the First Amendment is not infringed by an interpretation of § 419A(c) which does not require the prosecution to prove scienter as to age. It avers that the

only constitutionally required scienter element is that the defendant have knowledge of the nature and contents of the conduct being photographed. It concludes that "within the voluntary act of photographing a subject, there exists a knowledge of the nature of what is being photographed." Therefore, it asserts that § 419A(c) does not operate as a strict liability offense and consequently passes constitutional muster.

Finally, the State contends that, if we find that mistake of age is a defense, placing the burden of raising the defense on the defendant does not create a due process violation. Specifically, it avers that requiring the defendant to produce some evidence of a mistake of age defense is not a violation of the Due Process Clause as long as once the issue is raised, the State bears the burden of persuasion beyond a reasonable doubt as to the issue. In any event, it is the State's position that the Court of Special Appeals properly held that Outmezguine waived his right to review on the issue of reasonable mistake of age.

### III

Assuming § 419A(c) operates as a strict liability crime—that is, knowledge of the minor's age is not an element of the offense and a reasonable mistake of age is not available as a defense—we first consider whether such a construction is unconstitutional under the First Amendment to the United States Constitution, which is applicable to the States through the Fourteenth Amendment.[9] *See Eanes v. State,* 318 Md. 436, 445, 569 A.2d 604, *cert. denied,* 496 U.S. 938, 110 S.Ct. 3218, 110 L.Ed.2d 665 (1990). It is well established that the First Amendment's protection of speech is not afforded to obscene materials. *See Miller v. California,* 413 U.S. 15, 23, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973); *Roth v. United States,* 354 U.S. 476, 485, 77 S.Ct. 1304, 1309, 1 L.Ed.2d 1498 (1957).

---

9. The First Amendment provides in pertinent part:
"Congress shall make no law ... abridging the freedom of speech."

In *New York v. Ferber*, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982), the Supreme Court determined that explicit materials involving minors, which are not obscene under the *Miller* test, are also not protected by the First Amendment.[10] Specifically, it held "that child pornography . . . is unprotected speech subject to content-based regulation." *Ferber, supra*, 458 U.S. at 766 n. 18, 102 S.Ct. at 3359 n. 18. The Court reasoned that states have a compelling interest in protecting minors, and therefore could regulate the production or dissemination of child pornography even if the material does not fall within the traditional definition of obscenity. *Id.* at 756–64, 102 S.Ct. at 3354–58. In other words, the *Ferber* Court concluded that it is constitutionally permissible for states to proscribe nonobscene materials classified as child pornography. *Id.* at 764–65, 102 S.Ct. at 3358–59.

We are, of course, mindful that a statute, such as § 419A(c), which regulates speech, albeit unprotected speech, could possibly have a chilling effect on protected expression if criminality is imposed without a requirement that the defendant have knowledge of the child's minority.[11] Laws that potentially cause individuals to refrain from exercising their right to free speech should be closely scrutinized. *See Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 637, 100 S.Ct. 826, 836, 63 L.Ed.2d 73 (1980); *Bantam Books, Inc.*

---

**10.** The Supreme Court has stated that the following guidelines should be utilized to determine if material is considered obscene:

"(a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest . . .; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value."

*Miller, supra*, 413 U.S. at 24, 93 S.Ct. at 2615 (quoting in part *Roth, supra*, 354 U.S. at 489, 77 S.Ct. at 1311).

**11.** Indeed, the Supreme Court has recognized that protected and unprotected expression are "often separated . . . only by a dim and uncertain line." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 66, 83 S.Ct. 631, 637, 9 L.Ed.2d 584 (1963). In the instant case, the protected expression is the production of adult nonobscene pornography, while the unprotected expression is the production of child pornography.

*v. Sullivan,* 372 U.S. 58, 70, 83 S.Ct. 631, 639, 9 L.Ed.2d 584 (1963).

In the context of a strict liability child pornography statute, photographers may be afraid of mistakenly using a minor and facing severe criminal penalties, and thus choose to refrain entirely from photographing nonobscene, but sexually explicit, material involving adults. This potential chilling effect may be best analyzed under the overbreadth doctrine, as that doctrine focuses on preventing self-censorship of protected speech. *See Ferber, supra,* 458 U.S. at 768, 102 S.Ct. at 3360. Indeed, the Supreme Court has frequently applied an overbreadth analysis in the area of child pornography. *See Osborne v. Ohio,* 495 U.S. 103, 111–22, 110 S.Ct. 1691, 1697–1703, 109 L.Ed.2d 98 (1990); *Massachusetts v. Oakes,* 491 U.S. 576, 581–84, 109 S.Ct. 2633, 2637–39, 105 L.Ed.2d 493 (1989) (plurality opinion); *Ferber, supra,* 458 U.S. at 767–74, 102 S.Ct. at 3359–64.

■ The doctrine of overbreadth is designed to protect First Amendment freedom of expression from laws written so broadly that the fear of punishment might discourage people from taking advantage of that freedom. *See Broadrick v. Oklahoma,* 413 U.S. 601, 611–13, 93 S.Ct. 2908, 2915–17, 37 L.Ed.2d 830 (1973); *Curran v. Price,* 334 Md. 149, 167, 638 A.2d 93 (1994). Nevertheless, the doctrine is used sparingly, and in order for a statute to be invalidated for overbreadth, its overbreadth must be substantial. *See Osborne, supra,* 495 U.S. at 112, 110 S.Ct. at 1697; *Broadrick, supra,* 413 U.S. at 615, 93 S.Ct. at 2917.

When analyzing § 419A(c) under the overbreadth doctrine, we balance the right to freedom of expression against the right of the State to protect children against sexual exploitation. To do this, we examine the likelihood that protected expression will be chilled and the value of the expression that potentially could be chilled, keeping in mind that a statute will only be invalidated if it is substantially overbroad.

The protected speech in this case, the production of nonobscene adult pornography, would most likely not be chilled if

we interpreted § 419A(c) to be a strict liability offense. A photographer or filmmaker is in a position to ascertain the true age of the individual being photographed or filmed by requiring that individual to produce a birth certificate, driver's license, or similar governmental identification card. A reasonable bona fide attempt to verify the authenticity of such documents will thus ensure that the subject being used is not a child. As we see it, this is not an unreasonable burden for a photographer or filmmaker. Therefore, we think that the vast majority of those who film and photograph adult nonobscene explicit conduct would continue to produce their work even if they were faced with a strict liability child pornography statute.

The value of the expression sought to be protected in this case arguably deserves less First Amendment protection than other forms of expression.[12] The Supreme Court said in *Ferber* that "[t]he value of permitting ... photographic reproductions of children engaged in lewd sexual conduct is exceedingly modest, if not *de minimus*." 458 U.S. at 762, 102 S.Ct. at 3357. Similarly, we believe that the value of the constitutionally protected expression in this case, the production of nonobscene adult pornography, is minimal.

The State unquestionably has a significant interest in protecting children, *see, e.g., Osborne, supra*, 495 U.S. at 109, 110 S.Ct. at 1696; *Ginsberg v. New York*, 390 U.S. 629, 641–43, 88 S.Ct. 1274, 1281–83, 20 L.Ed.2d 195 (1968), and in prohibiting the use of children as subjects in pornographic material. *See Ferber, supra*, 458 U.S. at 757, 102 S.Ct. at 3354 (stating that the goal of preventing the sexual exploitation of children is "of surpassing importance"). Balancing these various interests,

---

12. The Supreme Court has occasionally suggested that certain speech, far removed from the political arena, deserves less First Amendment protection and may be subjected to special regulation. *See Dun & Bradstreet v. Greenmoss Builders*, 472 U.S. 749, 758, 758 n. 5, 105 S.Ct. 2939, 2944, 2944 n. 5, 86 L.Ed.2d 593 (1985) (plurality opinion) and cases cited therein. Justice Powell, writing for a divided Court, noted that obscene speech and "fighting words" receive no First Amendment protection while commercial speech receives reduced protection.

we conclude that the low value of expression (adult nonobscene pornography) sought to be protected is easily overcome by the interest in protecting children from sexual exploitation. Consequently, the potential small chilling effect on the producers of such expression must be sacrificed. Certainly, the chilling effect would not be considered "substantial" as is required under an overbreadth analysis. Therefore, we hold that the First Amendment does not require scienter to be an element of the offense, nor does it require that a reasonable mistake of age defense be available to defendants who are prosecuted under § 419A(c).

Outmezguine argues that the Ninth Circuit's decision in *U.S. v. U.S. Dist. Court for Cent. Dist. of Cal.*, 858 F.2d 534 (9th Cir.1988) should guide our decision today. In that case, the court held, under the similar federal child pornography statute, that "the first amendment does not permit the imposition of criminal sanctions on the basis of strict liability where doing so would seriously chill protected speech." *Id.* at 540.[13] After analyzing a number of Supreme Court cases, the court said:

> "a speaker may not be put at complete peril in distinguishing between protected and unprotected speech. Otherwise, he could only be certain of avoiding liability by holding his tongue, causing him 'to make only statements which "steer far wide[ ] of the unlawful zone." ' As the Court noted . . . , 'a rule that would impose strict liability on a publisher for [unprotected speech] would have an undoubted "chilling" effect on speech . . . that does have constitutional value.' " (citations omitted).

*Id.* at 539.

The Ninth Circuit nevertheless concluded that the First Amendment does not require knowledge of the minor's age to ·

---

**13.** The federal child pornography statute makes it a crime for:

"Any person [to] employ[ ], use[ ], persuade[ ], induce[ ], entice[ ], or coerce[ ] any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct." 18 U.S.C.A. § 2251(a) (West Supp.1994).

be an element of the offense. It did hold that the First Amendment requires that a reasonable mistake of age defense be available; it stated:

> "[Legislatures] may not impose very serious criminal sanctions on those who have diligently investigated the matter and formed a reasonable good-faith belief that they are engaged in activities protected by the first amendment. 'Freedoms of expression require "breathing space"'; imposition of major criminal sanctions on [individuals] without allowing them to interpose a reasonable mistake of age defense would choke off protected speech."

*Id.* at 540–41 (citations omitted). The court concluded, however, that placing the burden on the defendant to prove by clear and convincing evidence that he was mistaken about the child's minority was sufficient to overcome the federal child pornography statute's constitutional infirmities. *Id.* at 542–44.

Unlike the Ninth Circuit, the Court of Appeals of Minnesota has concluded that the First Amendment does not require a defense of mistake of age. In *State v. Fan*, 445 N.W.2d 243 (Minn.App.1989), *cert. denied*, 494 U.S. 1030, 110 S.Ct. 1480, 108 L.Ed.2d 617 (1990), the court upheld its child pornography statute which provides that "mistake as to the minor's age is [not] a defense." *Id.* at 247–48. The *Fan* court distinguished the *U.S. Dist. Court* case by stating that the federal statute was silent with respect to the mistake of age defense, whereas the Minnesota statute expressly excluded the mistake of age defense. 445 N.W.2d at 247. Consequently, it explained that the Minnesota Legislature's clear intent was to have a strict liability offense and that such a construction did not violate the First Amendment.[14]

Outmezguine correctly observes that "criminal responsibility may not be imposed [for violations of child pornography laws] without some element of scienter on the part of the

---

**14.** The Minnesota court deferred to the Legislature because it believed that the regulation of the production of child pornography involved conduct, as well as speech, and states have significant power to regulate conduct. *Fan, supra,* 445 N.W.2d at 247.

defendant." *Ferber, supra,* 458 U.S. at 765, 102 S.Ct. at 3358. This scienter requirement, however, does not refer to knowledge of the minor's age. *See United States v. Kleiner,* 663 F.Supp. 43, 44 (S.D.Fla.1987) (holding that the knowledge element, located in the federal crime that prohibits the shipment or transportation of child pornography in interstate commerce, "does not concern the age of the child"); *United States v. Reedy,* 632 F.Supp. 1415, 1422 (W.D.Okla.1986), *aff'd,* 845 F.2d 239 (10th Cir.1988), *cert. denied,* 489 U.S. 1055, 109 S.Ct. 1318, 103 L.Ed.2d 587 (1989) (stating that "the federal child pornography law does not require that a defendant intend to or knowingly employ . . . a child below eighteen years of age").

The scienter requirement refers to knowledge of the "nature and character" of the materials produced. Section 419A(c) satisfies this requirement because a defendant photographer must have knowledge that he or she is taking pictures of sexual conduct as defined in § 416. *See United States v. Brown,* 862 F.2d 1033, 1036 (3rd Cir.1988) (stating that the federal crime that prohibits the knowing receipt of child pornography only requires knowledge "that the material [received] is child pornography"); *Reedy, supra,* 632 F.Supp. at 1422 (concluding that the federal child pornography statute "requires [only] that a defendant act with the purpose of producing a visual depiction of sexually explicit conduct. . . . The defendant must [only] know the character and content of the visual depiction."). Consequently, § 419A(c) contains a scienter element—knowledge of the nature and character of the materials—and thus satisfies the *Ferber* scienter requirement.

If, however, a photographer mistakenly judges the boundaries of what is considered sexual conduct, he does so at his own peril. *See Hamling v. United States,* 418 U.S. 87, 123, 94 S.Ct. 2887, 2910, 41 L.Ed.2d 590 (1974) (concluding that, in the context of obscenity, the prosecution must prove that the defendant "knew the character and nature of the materials," not that they were legally obscene). Therefore, we hold that the First Amendment does not require knowledge of the

minor's age to be an element of the crime under § 419A(c), nor does it require a reasonable mistake of age defense. We now turn to the central issue in this case—determining the proper construction of § 419A(c).

## IV

### A

The cardinal rule of statutory interpretation is to ascertain and effectuate legislative intent. *See GEICO v. Insurance Comm'r*, 332 Md. 124, 131, 630 A.2d 713 (1993); *State v. Crescent Cities Jaycees*, 330 Md. 460, 468, 624 A.2d 955 (1993). In so doing, the primary source is the language of the statute. *See Maryland Nat'l Bank v. Pearce*, 329 Md. 602, 619, 620 A.2d 941 (1993). The plain language can not be viewed in isolation; rather, the entire statutory scheme must be analyzed as a whole. *See Williams v. State*, 329 Md. 1, 15–16, 616 A.2d 1275 (1992). We also look to the context surrounding the enactment of a statute to determine the intention of the Legislature. *See Pearce, supra*, 329 Md. at 619–20, 620 A.2d 941. For example, legislative reports and other legislative history often provide helpful guidance in attempting to discern the Legislature's intent. *See NCR Corp. v. Comptroller*, 313 Md. 118, 125, 544 A.2d 764 (1988); *Kaczorowski v. City of Baltimore*, 309 Md. 505, 515, 525 A.2d 628 (1987).

A plain reading of § 419A(c) reveals that it is silent with respect to whether the State must prove a defendant had knowledge of the minor's age. The State contends that the omission of a scienter requirement evidences the Legislature's intention to have § 419A(c) operate as a strict liability offense. In the past, however, we have read a knowledge requirement into statutes despite the fact that the statutes plainly did not include such a requirement. *See State v. McCallum*, 321 Md. 451, 583 A.2d 250 (1991); *Dawkins v. State*, 313 Md. 638, 547 A.2d 1041 (1988).

In *McCallum*, we considered the issue of whether the offense of driving with a suspended driver's license was a

strict liability crime. In that case, the defendant requested the trial court to instruct the jury that a *mens rea* requirement exists in the statute even though no express knowledge requirement is found in the statute. Specifically, the judge was asked to instruct the jury that a defendant must know his or her license is suspended to be convicted of the crime of driving on a suspended license. 321 Md. at 454, 583 A.2d 250. The court refused this instruction, concluding that the crime was a strict liability offense.

We determined, as the Court of Special Appeals did, that the Legislature did not intend the offense to be a strict liability crime. *Id.* at 456–57, 583 A.2d 250. Therefore, we held that the trial court should have instructed the jury that a defendant must have knowledge that his license was suspended before convicting him of driving on a suspended license. *Id.* at 457, 583 A.2d 250.

In *Dawkins,* we confronted the issue of whether knowledge is an element of the offenses of possessing a controlled dangerous substance and possessing controlled paraphernalia despite the fact that the statute defining those crimes did not expressly contain the element of knowledge. We looked to other jurisdictions where the courts had construed similar statutes to include a knowledge element. 313 Md. at 645–48, 547 A.2d 1041. In addition, after examining the entire statutory scheme, we determined that the Legislature intended knowledge to be an element of the two offenses. *Id.* at 648–49, 547 A.2d 1041. We therefore held that "[i]n accord with the overwhelming majority of other jurisdictions, . . . 'knowledge' is an element of the offenses." *Id.* at 651, 547 A.2d 1041.

Those cases, however, are distinguishable from the case at bar. In each, we concluded that the Legislature, despite an omission, intended to provide a *mens rea* requirement. Thus, we read a scienter requirement into those statutes. In the instant case, however, when looking at the entire statutory scheme of § 419A, we are unable to say that the Legislature intended to include a requirement that the State affirmatively

prove that a photographer or filmmaker of child pornography had knowledge of the child's minority.

Although this case is different than *McCallum* and *Dawkins,* it is similar, in some respects, to *Garnett v. State,* 332 Md. 571, 632 A.2d 797 (1993), where we construed Maryland's statutory rape statute, § 463(a)(3). There, we concluded that the Legislature intended to impose strict criminal liability. We said:

"Section 463(a)(3) prohibiting sexual intercourse with underage persons makes no reference to the actor's knowledge, belief, or other state of mind. As we see it, this silence as to *mens rea* results from legislative design. First, subsection (a)(3) stands in stark contrast to the provision immediately before it, subsection (a)(2) prohibiting vaginal intercourse with incapacitated or helpless persons. In subsection (a)(2), the Legislature expressly provided as an element of the offense that 'the person performing the act *knows or should reasonably know* the other person is mentally defective, mentally incapacitated, or physically helpless.' Code, § 463(a)(2) (emphasis added in original). In drafting this subsection, the Legislature showed itself perfectly capable of recognizing and allowing for a defense that obviates criminal intent; if the defendant objectively did not understand that the sex partner was impaired, there is no crime. That it chose not to include similar language in subsection (a)(3) indicates that the Legislature aimed to make statutory rape with underage persons a more severe prohibition based on strict criminal liability."

332 Md. at 585–86, 632 A.2d 797.

Similarly, we can not read into § 419A(c) an element of scienter as to the age of the minor because, when contrasted with §§ 419A(b) and 419A(d), § 419A(c) contains a conspicuous absence of any knowledge requirement. That is, subsection (c) makes it a crime to "photograph[ ] or film[ ] a minor engaging in an obscene act or engaging in sexual conduct," whereas subsection (b) makes it illegal to "solicit[ ], cause[ ],

induce[ ], or *knowingly* permit[ ] a minor to engage as a subject in the production of any obscene matter or ... engage[ ] as a subject in sexual conduct," (emphasis added) and subsection (d) makes it a crime to *"knowingly* promote[ ], distribute[ ], or possess[ ] with intent to distribute any matter ... that depicts a minor engaged as a subject in sexual conduct." (emphasis added).

The Legislature chose to include a scienter element in both subsections (b) and (d) of § 419A, while not providing a similar requirement in subsection (c). The different treatment for each of these subsections was not without purposeful design. Subsection (d) addresses distributors and consumers of child pornography, who enjoy greater First Amendment protection than photographers and filmmakers of child pornography; thus, a scienter requirement is appropriate. *See United States v. X–Citement Video, Inc.,* 982 F.2d 1285, 1291 (9th Cir.1992) (holding that "the constitutional minimum requirement of scienter for the [federal child pornography] Act's proscription of transporting or receiving child pornography is knowledge that at least one of the performers is under age 18").

Subsection (b) does not require the State to prove knowledge when the defendant "solicits, causes, or induces" a minor to engage in child pornography, but requires the State to prove scienter when the defendant is merely "permitting" a minor to engage in child pornography. Once again, the Legislature drew a logical distinction; it deliberately omitted a scienter requirement for those who commit the more egregious "active" conduct of enticing children into the world of child pornography, while including a knowledge requirement for those who "passively" permit children to be exploited. Subsection (c), like the first portion of subsection (b), attacks those individuals who actively exploit children—photographers and filmmakers who produce child pornography. Therefore, we conclude that the Legislature deliberately and purposefully chose not to make knowledge of the child's age an element of

the crime.[15]

Further support for this construction can be found in the legislative history surrounding the enactment of the first child pornography statute in 1978. As the Court of Special Appeals said:

> "there was a spate of bills introduced into [the 1978] session of the General Assembly dealing with child pornography, some of which would have expressly required knowledge that the victim was under the prescribed age. *See,* for example, S.B. 248 (1978), H.B. 35 (1978). The question of whether to include such a requirement was thus squarely before the Legislature, and, by enacting the bill that it did, it chose not to do so."

97 Md.App. at 162, 627 A.2d 541. It is therefore clear, both from the plain language of § 419A and from the statute's legislative history, that knowledge as to the minor's age is not an element of the offense under § 419A(c). Not so clear is whether the Legislature intended to make this offense a strict liability crime or whether it intended to provide a reasonable mistake of age defense.

### B

The plain language of § 419A(c) would indicate that, just as we found in *Garnett, supra,* the Legislature intended to make this offense a strict liability crime. But a detailed analysis of the legislative history of the statute provides important insight into the Legislature's true intent. In 1989, § 419A was amended. The Court of Special Appeals thoroughly discussed this amendment:

---

**15.** Moreover, in § 420, the Legislature made clear that it knows how to make knowledge of the minor's age an element of an offense. That section makes it a crime for an individual, *"with knowledge that a person is a minor under 18 years of age,* and . . ., while in possession of such facts that he should reasonably know that the person is a minor under 18 years of age, [to] hire[ ], employ[ ], or use[ ] such minor"* for the purpose of selling or displaying obscene materials. (emphasis added). Thus, if the Legislature intended knowledge of the minor's age to be an element of § 419A(c), it could have provided the language used in § 420.

"It was in 1989 that the Legislature came closest to revisiting the question now before us. Neither the law then in effect nor the 1989 bill purported, expressly, to include knowledge of the child's age as an element of the offense, to be proved by the State. Indeed, the Attorney General's Office had opined with respect to the 1989 bill (H.B. 243) that, based on decisions dealing with the Federal counterpart, 'knowledge of the age of the child is not an element of the offense . . . and lack of knowledge need not be recognized as a defense.' *See* letter opinion dated February 20, 1989, from Assistant Attorney General Kathryn M. Rowe to Delegate Anne MacKinnon, included among the records of the House Judiciary Committee on H.B. 243 in the Department of Legislative Reference."

97 Md.App. at 165, 627 A.2d 541. The court continued:
"The first reader 1989 bill contained a provision that '[a] mistake of age is not a *defense* to a prosecution under this section' (emphasis added in original), but the Legislature deleted that statement, notwithstanding the Attorney General's letter, apparently in response to a concern registered by a representative of the American Civil Liberties Union. . . . [A]n inference could perhaps be drawn from that deletion that the Legislature intended for mistake as to the victim's age to be an affirmative defense. . . ."

*Id.* at 165–66, 627 A.2d 541.

It is important to ascertain what prompted the Legislature to remove this language. The bill, H.B. 243, was first read on January 11, 1989 and contained the language "[a] mistake of age is not a defense to a prosecution under this section." [16] Then, on February 7, 1989, as the intermediate appellate court noted, the American Civil Liberties Union of Maryland testified with regard to H.B. 243. It said:

"We believe the bill would unconstitutionally remove any necessity of scienter from the section of the law, by stating

---

16. The title of the proposed bill also provided that the purpose of the bill was, in part, to "prohibit[ ] a certain defense to prosecution."

that 'a mistake of age is not a defense to prosecution under this section.' "

The ACLU continued:

"Under this bill, if a 17–year old produces false identification, stating that he is 21, and a producer proceeds to make [a pornographic] film, that producer could be jailed for 20 years. Our system of justice dictates against that punishment."

On February 28, 1989, three weeks after the ACLU testified, H.B. 243 was amended and the language that stated "[a] mistake of age is no defense" was deleted from the bill.[17] We agree with the Court of Special Appeals that this prompt action by the Legislature most likely can be directly attributed to the ACLU's concerns. From this chain of events, it is arguable that the Legislature did not want to eliminate the availability of a mistake of age defense, but rather intended to permit a defendant indicted under § 419A(c) to argue that he was reasonably mistaken about a child's age.

Twenty-five states and the District of Columbia, under similar statutes proscribing child pornography, require the prosecution to prove scienter as to the minor's age or allow a mistake of age defense.[18] Only three states expressly pre-

---

**17.** The title of the bill was also amended by removing the language that said the purpose of the bill was to "prohibit[ ] a certain defense to prosecution."

**18.** *See* Alaska Stat. § 11.41.455 (1989); Ariz.Rev.Stat.Ann. § 13–3553 (1989); Ark.Code Ann. §§ 5–27–403, –404 (Michie 1993); Cal.Penal Code § 311.4 (West 1988); Colo.Rev.Stat.Ann. § 18–6–403 (West 1990); Conn.Gen.Stat. § 53a–196, –196a, –196b (1989 & Supp.1993); D.C.Code Ann. § 22–2012, –2014 (1989); Ga.Code Ann. § 16–12–100 (Michie 1992); Ill. Compiled Stat. ch. 720, sect. 5/11–20.1 (Smith–Hurd Supp.1993); Ind.Code Ann. § 35–42–4–4 (Burns 1994); Ky.Rev.Stat. Ann. §§ 531.310, 531.320, 531.330 (Michie/Bobbs–Merrill 1985 & Supp.1988); Me.Rev.Stat.Ann. tit. 17, § 2922 (West 1983 & Supp. 1993); Mass.Ann.Laws ch. 272, § 29A (Law. Co-op.1992); Mich.Comp. Laws Ann. § 750.145c (West 1991); Mont.Code Ann. § 45–5–625 (1993); Neb.Rev.Stat. § 28–1463.03 (1989); Nev.Rev.Stat.Ann. §§ 200.-710, 200.720 (1992); N.Y. Penal Law §§ 263.05–263.20 (Consol.1984); N.D. Cent.Code §§ 12.1–27.2–02 to –05 (Supp.1993); 18 Pa.Cons.Stat. Ann. § 6312 (Supp.1993); Tenn.Code Ann. §§ 39–17–1004,, –1005

clude a defense of mistake of age.[19]

---

(1991); Tex. Penal Code Ann. § 43.25 (West 1989); Utah Code Ann. § 76–5a–3 (1990); Vt.Stat.Ann. tit. 13, § 2824 (Supp.1993); Wash.Rev. Code §§ 9.68A.040, 9.68A.110 (1992); Wis.Stat.Ann. § 948.05 (Supp. 1993).

**19.** *See* La.Rev.Stat.Ann. § 14:81.1 (West 1986 & Supp.1994); Minn. Stat.Ann. § 617.246 (West 1987); N.C.Gen.Stat. §§ 14–190.16, –190.17 (Supp.1993). A Florida court has also interpreted its child pornography statute, Fla.Stat.Ann. § 827.071 (West Supp.1994), to preclude a mistake of age defense. *See Hicks v. State*, 561 So.2d 1284 (Fla.Dist.Ct. App)., *cert. denied*, 574 So.2d 141 (Fla.1990).

In addition, 12 jurisdictions make no mention of scienter in their child pornography statutes and thus presumably also operate as strict liability crimes. *See* Del.Code Ann. tit. 11, § 1108 (Supp.1992); Kan. Stat.Ann. § 21–3516 (Supp.1993); Miss.Code Ann. § 97–5–33 (Supp. 1993); Mo.Ann.Stat. § 568.060 (Vernon Supp.1993); N.H.Rev.Stat. Ann. § 649–A:3 (Supp.1993); N.J.Stat.Ann. § 2C:24–4 (West Supp. 1993); N.M.Stat.Ann. § 30–6A–3 (Michie Supp.1993); Ohio Rev.Code Ann. § 2907.32.3 (Anderson 1993); Or.Rev.Stat. § 163.670 (1993); R.I.Gen.Laws § 11–9–1 (Supp.1993); S.D.Codified Laws Ann. § 22–22– 23 (1988); W.Va.Code § 61–8C–2 (1992).

Seven states have child pornography statutes that are either incomprehensible with regard to whether scienter as to the child's age is an element or have seemingly inconsistent provisions. *See* Ala.Code § 13A–12–197 (Supp.1993) (provides that a defendant must "knowingly" film or photograph a minor engaged in sexual conduct, but defines "knowingly" in an earlier section to mean knowledge of the "nature of the matter"); Haw.Rev.Stat. § 707–750 (1985 & Supp.1992) (does not mention a scienter requirement, but confusingly provides that "[t]he fact that the person ... used ... in the pornographic material ... was at that time, a minor, is prima facie evidence that the defendant knew the person to be a minor"); Idaho Code §§ 18–1506, –1507 (1987 & Supp.1991) (§ 18–1506 appears to operate as a strict liability offense for children under 16 years of age, but § 18–1507 provides a "knowingly" requirement for 16 and 17 year olds); Iowa Code Ann. § 728.12 (West 1993) (provides a knowledge requirement, but seemingly applies to knowledge that the act is being photographed or filmed); Okla.Stat. Ann. tit. 21, §§ 1021, 1021.2 (Supp.1994) (§ 1021 makes it a crime to "willfully" solicit a minor to perform an obscene act, but § 1021.2, without any reference to scienter, makes it a crime to cause a minor to participate in a film or photograph that depicts the minor engaging in sexual conduct); S.C.Code Ann. §§ 16–3–810, 16–3–820, 16–3–830, 16– 15–395, 16–15–405 (Law. Co-op.1985 & Supp.1993) (§§ 16–15–395 and 16–15–405 each provide that a "[m]istake of age is not a defense," but § 16–3–830 provides, for almost the identical crimes, that "[i]t is an affirmative defense ... that the defendant ... reasonably believed that the [minor] was eighteen years of age or older"); Va.Code Ann. § 18.2– 374.1 (Michie Supp.1993) (providing a scienter requirement for "participat[ing] in the filming, photographing or other reproduction" of child

## V

Outmezguine argues that if mistake of age is permitted as a defense, then necessarily knowledge of the minor's age must be an element of the offense. He believes that a defense of mistake of age is only relevant to a crime involving a culpable mental state and, thus, if we acknowledge mistake of age to be a defense, we are in fact recognizing scienter to be an element of the offense. We disagree with this contention. On its face, there are three possible constructions of a statute such as § 419A(c): (1) a strict liability offense where scienter as to age is not an element and mistake of age is not a defense; (2) scienter is not an element but mistake of age is a defense which may be raised by the defendant; and (3) scienter is an element of the offense which the State must affirmatively prove. Apparently, Outmezguine believes that only the first and third interpretations are possible. But, as we have said, it is not unreasonable to conclude that § 419A(c) could fall within the second option. Therefore, Outmezguine's conclusion that a mistake of age defense is only applicable if scienter is an element of the offense is erroneous.

■ Outmezguine next asserts that shifting the "burden" to the defendant to prove the absence of the mental state required for a crime may be unconstitutional under the Due Process Clause of the Fourteenth Amendment. He observes that, in general, the Due Process Clause "requires the prosecution, to prove beyond a reasonable doubt, 'every fact necessary to constitute the crime' with which a defendant is charged." *State v. Evans,* 278 Md. 197, 200, 362 A.2d 629 (1976) (quoting in part *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970)).

He also believes that placing the burden on a defendant to prove that he did not know the child's age is equivalent to creating a presumption that the defendant knew the child's minority. If an element of an offense is established by a

pornography, but providing no scienter requirement for producing child pornography).

presumption, he avers that a Due Process violation has occurred. He notes that Professor McLain has stated that "[t]here are due process limitations on the state's ability to rely on presumptions. A presumption which allocates to the defendant either the burden of production or the burden of persuasion, or both, must pass [constitutional] muster." Lynn McLain, *Maryland Evidence,* § 303.2, at 244 (1987 & Supp. 1992).

The State appears to concede that the burden of persuasion could not be placed on a defendant to prove that the defendant did not know the minor's age. It urges, however, that it is permissible to place the burden of production on a defendant. Specifically, it states that "the fact that the defendant is required to produce some evidence of his mistake of age defense, thus raising the issue, is not a violation of the Due Process clause as interpreted in *Mullaney v. Wilbur,* 421 U.S. 684 [, 95 S.Ct. 1881, 44 L.Ed.2d 508] (1975), as long as once the issue is raised then the State bears the burden of persuasion beyond a reasonable doubt as to the issue."

Unlike Outmezguine, we think that "[i]t is constitutional for the state to allocate, by means of a presumption, the initial burden of production of evidence on such issues as insanity and self-defense to the defendant." McLain, *supra,* § 303.2, at 244 n. 9. Similarly, it is constitutional to place the burden of production on a defendant to raise the issue of reasonable mistake of age. In *U.S. Dist. Court, supra,* 858 F.2d at 543, the Ninth Circuit placed the burden on the defendant to prove mistake of age by clear and convincing evidence. Thus, that court placed the ultimate burden of persuasion on the defendant.

We also disagree with Outmezguine that placing the burden of production on the defendant is necessarily equivalent to creating a presumption. As one court has stated: "even the traditionally strict liability offenses of statutory rape and selling alcohol to minors have not included criminal presumptions that the person involved was a minor." *American Library Ass'n v. Thornburgh,* 713 F.Supp. 469, 480–81 (D.D.C.

1989), *vacated on other grounds,* 956 F.2d 1178 (D.C.Cir.1992). Similarly, the mere shifting of the burden of production under § 419A(c) does not rise to a rebuttable presumption, especially considering the fact that this statute could have been drawn to provide strict criminal liability.[20]

The method of applying this defense of reasonable mistake of age would be that suggested by Judge Bell in his dissenting opinion in *Garnett, supra,* 332 Md. at 594 n. 3, 632 A.2d 797:

> "Before the State's burden affirmatively to prove the defendant's mental state kicks in, the defendant must have generated the issue by producing 'some evidence' supporting his or her claim of mistake of fact. If the defendant generates the issue, the State must prove beyond a reasonable doubt that the act was committed without any mistake of fact—that the defendant acted intentionally and knowingly." (citations omitted).

Indeed, this method appears to be precisely the interpretation requested by the State in its brief.

## VI

 The State argues that Outmezguine failed to raise the issue of mistake of age at his trial and therefore has waived this defense. Outmezguine maintains that once the court ruled, on his motion for acquittal at the end of the State's case, that knowledge of the child's minority was not an element of the crime, it would have been futile to offer any evidence which showed he was mistaken about Jennifer's age.

At trial, Outmezguine's defense was that "I did not take the pictures" and, in the alternative, "I did not know how old she was." All of his challenges to the statute centered on his belief that the State needed to prove that he had knowledge that Jennifer was under 18. Had he argued that he reasonably thought Jennifer was 18 or older, the issue may have

---

20. Other jurisdictions have expressly provided presumptions in their child pornography statutes. *See, e.g.,* Haw.Rev.Stat. § 707–750 (1985 & Supp.1992); Ky.Rev.Stat.Ann. § 531.330 (Michie/Bobbs–Merrill 1985); Va.Code Ann. § 18.2–374.1 (Michie Supp.1993).

been preserved for appeal. But he did not put forth one single piece of evidence that tended to show he believed Jennifer to be an adult.

Outmezguine thus failed to generate the issue of mistake of age; in fact, his situation is practically identical to the hypothetical set forth by Judge Bell in his dissent in *Garnett, supra.* "The mistaken belief must tend to negate the *mens rea* necessary to the commission of the crime. For example, belief that the victim was 13 and ½ years of age, instead of 13, will be of no avail since section 463(a)(3)'s age limit is 14." 332 Md. at 605 n. 14, 632 A.2d 797. Similarly, Outmezguine's argument that "I did not know how old she was" is insufficient to generate the issue of reasonable mistake of age in this case.

Outmezguine contends that he did not offer any such evidence because the trial court ruled that knowledge of the minor's age was not an element of the crime. We recently stated that if a trial judge makes a mistake, it is incumbent upon counsel to elucidate the record. *Bobbitt v. Allied–Signal, Inc.,* 334 Md. 347, 639 A.2d 142 (1994). We also said that a party cannot lie back and be heard to complain only after an adverse verdict has been returned. *Id.*

In the instant case, the trial court was correct in its refusal to instruct the jury that knowledge is an element of the crime. Nevertheless, to preserve the issue for appeal, Outmezguine should have presented "some evidence" of his belief that Jennifer was an adult, notwithstanding the trial court's actions. It is interesting to note that the record is devoid of any attempt on Outmezguine's part to introduce evidence that would show he reasonably believed Jennifer was 18 or older. Rather, the only testimony before us (and before the trial court) was his statement that he did not know her age. Therefore, we conclude that Outmezguine failed to raise the defense of reasonable mistake of age and consequently waived his right to appellate review on that issue.

*JUDGMENT AFFIRMED, WITH COSTS.*

BELL, Judge, dissenting.

The majority assumes that Maryland Code (1957, 1992 Repl.Vol.) Art. 27, § 419A(c) operates as a strict liability crime and then holds that such a construction does not offend the First Amendment. Op. at 34, 38. It also holds that the First Amendment does not require that a defendant be afforded a reasonable mistake of age defense.[1] I, of course, consistent with my dissenting opinion in *Garnett v. State*, 332 Md. 571, 593, 632 A.2d 797, 807 (1993), do not agree. Indeed, from my perspective, this case is even stronger than *Garnett*; it has what Garnett did not, First Amendment implications, the potential chilling effect on speech, which the majority itself acknowledges. Op. at 35. Thus, for the reasons stated in my dissent in *Garnett*, I respectfully dissent from Part III of the majority opinion.

In Part IV of its opinion, the majority undertakes the construction of § 419A(c). The majority concludes, on the basis of the plain language and its reading of the Legislative history, that knowledge of age is not an element of the offense. My disagreement with this conclusion has already been indicated *supra*. Conceding that an ambiguity existed as to whether the Legislature intended § 419A(c) to be a strict liability offense or whether it contemplated that a reasonable mistake of age defense would be available, the majority undertook "a detailed analysis of the legislative history," looking for "important insight into the Legislature's true intent." Op. at 45. It agreed with the Court of Special Appeals, based on the amendment of H.B. 243, to delete a provision which would have made clear that mistake of age was not a defense, that "it is arguable that the Legislature did not want to eliminate the availability of a mistake of age defense, but rather intended to

---

1. Generally, mistake of fact may negate the mental state required to establish a material element of a crime. Wayne R. LaFave and Austin W. Scott, Jr., *Criminal Law*, § 47, at 356 (1972). A person who engages in proscribed conduct is relieved of criminal liability if, because of ignorance or mistake of fact, he or she did not have the requisite culpable mental state. *See* Wharton's Criminal Law § 76 at 369–70 (14th ed. 1978).

permit a defendant indicted under § 419A(c) to argue that he was reasonably mistaken about a child's age." *Id.* at 47. It also recognized that the weight of authority is in favor of allowing the defense. *Id.* at 47–48 n. 18 & 19. The majority then proceeds to reject the proposition that proof of age and the mistake of age defense must co-exist. It noted, in that regard, that scienter may not be an element of a crime, a defense to which may be a reasonable mistake of age. It goes on expressly to reject the argument that it is unconstitutional for the State to allocate, by presumptions, the initial burden of production, and expressly to endorse the placement on the defendant of the burden to generate the mistake of age issue. But it never explicitly decides, so far as I have been able to determine, that the mistake of age defense was not contemplated by the Legislature when it enacted § 419A(c).

To the extent that the majority opinion can be read as holding that the mistake of age defense applies to § 419A(c), I would concur. The majority has accurately stated my position in that regard. Op. at 51. If it cannot be so read, then, of course, I dissent from this part of the opinion, as well.

The majority concludes that Outmezguine "failed to raise the issue of mistake of age and therefore has waived this defense" because, in testimony, he said only that he "did not know how old she was." Op. at 51–52. I agree with the petitioner that the issue was adequately preserved for appellate review; there was in the record sufficient evidence to generate the claim of reasonable mistake of fact.

We recently considered "under what circumstances imperfect self-defense may be generated by evidence other than the defendant's testimony," that is to say, whether the source of the evidence to establish a claim of mistake of fact, because it is necessarily subjective and provable only by circumstantial evidence, *see State v. Jenkins*, 307 Md. 501, 513–15, 515 A.2d 465, 471–72 (1986), must be the defendant's testimony. *State v. Martin*, 329 Md. 351, 358–59, 619 A.2d 992, 995–96 (1993). We noted, as we had done in earlier cases, that, to generate the defense, all that was required was ' "some evidence' of the

issue of mitigation or self-defense (or [rely] upon evidence produced by the State)," *id.* at 358, 619 A.2d at 995, quoting *State v. Evans,* 278 Md. 197, 208, 362 A.2d 629, 635 (1976), and that:

> "*Some evidence* is not strictured by the test of a specific standard. It calls for no more than what it says—"some," as that word is understood in common, everyday usage. It need not rise to the level of "beyond reasonable doubt" or "clear and convincing" or preponderance." *The source of the evidence is immaterial;* it may emanate solely from the defendant. It is of no matter that the self-defense claim is overwhelmed by evidence to the contrary. If there is any evidence relied on by the defendant which, if believed, would support his claim that he acted in self defense, the defendant has met his burden. Then the baton is passed to the State. It must shoulder the burden of proving beyond a reasonable doubt to the satisfaction of the jury that the defendant did not kill in self defense."

329 Md. at 359, 619 A.2d at 995–96, quoting *Dykes v. State,* 319 Md. 206, 571 A.2d 1251, 1257 (1990). (emphasis added). We explained that that evidence, to be sufficient to generate the issue of mistake of fact, must be of circumstances permitting an inference to be drawn as to the defendant's state of mind at the time of the act, *i.e.,* evidence tending affirmatively to prove what the defendant felt or believed at the relevant time. *Id.,* 329 Md. at 367–68, 619 A.2d at 1000. *Cf. Dykes,* 319 Md. 206, 571 A.2d 1251 (defendant is entitled to an instruction on imperfect self-defense as long as there is "any" evidence in the case from which a jury could conclude that the defendant had the subjective belief that the use of deadly force was necessary). The source of that evidence ordinarily is, but need not be, the defendant's testimony. *Martin,* 329 Md. at 361–62, 619 A.2d at 997.

In this case, the combination of the appearance of the victim, the jury's question regarding the mistake of age defense, and the petitioner's conceded lack of knowledge of the victim's age coalesce to generate the issue. The petitioner testified at trial that "I did not know how old she was."

Photographs of the victim at fifteen years of age were introduced into evidence and, presumably, on the basis of those pictures, the jury inquired of the trial court whether mistake of age was a defense. This was sufficient to satisfy the "some evidence" requirement to generate the mistake of age defense. The trial court was therefore required to instruct the jury in accordance with the petitioner's request on mistake of age. *See* Maryland Rule 4–325. Its failure to so instruct was also reversible error.