42 A.3d 696

**Joan J. STICKLEY**

v.

**STATE FARM FIRE & CASUALTY COMPANY.**

**No. 307, Sept. Term, 2011.**

Court of Special Appeals of Maryland.

April 27, 2012.

S. Whitney Cleaver (Alexander & Cleaver, PA, on the brief), Fort Washington, MD, for appellant.

Michael J. Budow (Richard E. Schimel, Budow & Noble, PC, on the brief) Bethesda, MD, for appellant.

Panel: EYLER, JAMES R., WRIGHT, LAWRENCE F. RODOWSKY (Retired, specially assigned), JJ.

JAMES R., J.

Joan J. Stickley, appellant, appeals from the grant of a motion for summary judgment in favor of State Farm Fire & Casualty Company, appellee, in the Circuit Court for Montgomery County. At issue is the applicability of Maryland Code (2005 Supp.), § 19–504.1 of the Insurance Article ("Ins."), which requires an insurer to offer "under a policy . . . of private passenger motor vehicle liability insurance liability coverage for claims made by a family member in the same amount as the liability coverage for claims made by a nonfamily member under the policy . . .," to a personal liability

umbrella policy. In granting summary judgment in favor of appellee, the circuit court concluded that, pursuant to the unambiguous language of the statute, an umbrella policy is not a policy of "private passenger motor vehicle liability insurance"; thus, it does not fall within the purview of Ins. § 19–504.1. The question of what constitutes "private passenger motor vehicle liability insurance" and, more specifically, whether that phrase refers only to primary insurance policies, or whether it extends to umbrella policies, is an issue of first impression in Maryland. For the reasons that follow, we shall affirm.

## Factual & Procedural Background

On March 19, 2008, at approximately 2:05 p.m., appellant was the passenger in a motor vehicle operated by her husband, Vernon Stickley, which motor vehicle was proceeding west on Old Frederick Road near the intersection with Maryland Route 15 in Frederick, Maryland. At the same time, Joel Lindblom was operating a motor vehicle traveling north on Maryland Route 15. According to appellant, after stopping at a stop sign at the intersection of Old Frederick Road and Maryland Route 15, Mr. Stickley negligently proceeded into the Maryland Route 15 roadway where the vehicle he was operating was struck by the vehicle Mr. Lindblom was operating. Mr. Stickley was killed as a result of the accident, and appellant suffered significant injuries.

At the time of the accident, appellant and her husband owned several insurance policies issued by State Farm insurance companies, including a motor vehicle liability policy (the "motor vehicle policy") with limits for bodily injury of $100,000 per person/$300,000 per accident, and for property damage of $25,000 per accident issued by State Farm Mutual Automobile Insurance Company ("State Farm Mutual"), and a Personal Liability Umbrella Policy (the "umbrella policy") with limits of $2,000,000 for personal liability and $2,000,000 for uninsured and underinsured motor vehicle coverage, issued by appellee. The umbrella policy provided coverage for bodily injury, per-

sonal injury,[1] and property damage, as defined in the policy. The declarations page noted that coverage included uninsured and underinsured motor vehicle coverage. Appellant's claim was for bodily injury, defined as physical injury.

The umbrella policy mandated that the insured maintain specific underlying insurance, as shown on the declarations page, including automobile liability insurance. Automobile liability insurance is defined as "a policy which provides coverage for the insured for that insured's liability arising out of the ownership, operation, maintenance or use of any automobile. That [underlying] policy must include Uninsured and/or Underinsured Motor Vehicle coverage if Uninsured and/or Underinsured Motor Vehicle coverage is shown on the declarations page of this policy." Further, the umbrella policy mandated that " '[r]equired underlying insurance must be maintained at all times in an amount at least equivalent to the Minimum Underlying Limits shown on the declarations page." Appellant and her husband maintained the required underlying coverages.

The umbrella policy is not, strictly speaking, an excess policy, in that its coverage does not expressly track and provide the same coverage as the underlying policies. Rather, the umbrella policy requires the insured to pay the amount of the required primary coverage to the extent the required underlying coverage does not exist. While this distinction seems to have played a role in a few cases from other jurisdictions, as explained below, our decision does not turn on that distinction.

According to appellant, she and Mr. Stickley had always insured their homes and motor vehicles with State Farm, they had used the same State Farm agent for 45 or 50 years, and the umbrella policy was issued in the early–1980's. Following

---

**1.** The umbrella policy defined "personal injury" to include: false arrest, false imprisonment, wrongful eviction, wrongful detention of a person, abuse of process, malicious prosecution, libel, slander, defamation of character, and invasion of a person's right of private occupancy by physically entering into that person's residence.

the accident, appellant made liability claims under both policies. State Farm Mutual agreed that the motor vehicle liability policy provided coverage and extended the full policy limits of $100,000 to appellant. Appellee, however,<sup>9</sup> denied appellant's claim under the umbrella policy based on a policy exclusion commonly referred to as the "household exclusion." The terms of the exclusion provide:

### EXCLUSIONS

There is no coverage under this policy for any:

\* \* \*

**13. bodily injury** or **personal injury** to any insured as defined in part a. or b. of the definition of **insured,** including any claim made or suit brought against any **insured** to share damages with or repay someone else who may be obligated to pay damages because of such **bodily injury** or **personal injury;**

\* \* \*

### DEFINITIONS

\* \* \*

6. **"insured"** means:

    a. **you** and **your** relatives whose primary residence is **your** household;

    b. Any other human being under the age of 21 whose primary residence is **your** household and who is in the care of a person described in 6.a.[.]

There is no such exclusion in the motor vehicle policy.

Following appellee's denial of appellant's claim under the umbrella policy, appellant sought a declaratory judgment in the circuit court relying on Ins. § 19–504.1, which became effective October 1, 2004, and which applied to binders or policies of "private passenger motor vehicle liability insurance" issued, delivered or renewed in the State on or after January 1, 2005. Section 19–504.1 requires, *inter alia,* that when liability coverage under a policy of "private passenger motor

vehicle liability insurance" exceeds the requirements of Trans. § 17–103, an insurer must offer as part of that policy liability coverage for claims made by a family member in the same amount as the liability coverage for claims made by a non-family member under the policy. According to appellant, the "plain meaning" of a policy of " 'private passenger motor vehicle liability insurance' includes a personal liability umbrella polic[y]"; thus, the umbrella policy is subject to the requirements of Ins. § 19–504.1. As a result, according to appellant, appellee had to offer coverage under the umbrella policy for claims made by a family member in the same amount as coverage for claims made by a non-family member, and appellee failed to offer such coverage. In appellant's complaint seeking declaratory relief, appellant did not expressly allege the purported effect of a failure to "offer" coverage, assuming a statutory violation. On appeal, appellant contends that the effect is to "void" the household exclusion.

Subsequently, both parties filed motions for summary judgment, and a hearing was held on March 30, 2011. At the conclusion of the hearing, the court ruled that the requirements of Ins. § 19–504.1 were met when appellee tendered to appellant, a family member, the limit of coverage under the motor vehicle liability policy, the same amount of coverage provided for a non-family member. The court ruled that an umbrella policy is not a private passenger motor vehicle liability insurance policy; thus, is not a policy that is included under Ins. § 19–504.1, and ruled that there is no prohibition on a household exclusion in an umbrella policy.

Following the court's oral ruling, it issued an order denying appellant's motion for summary judgment, and granting appellee's motion for summary judgment. This appeal followed.

### Discussion

■ The umbrella policy was renewed after January 1, 2005 and, thus, is subject to § 19–504.1 if it comes within its substantive terms. The sole issue before us is whether a personal liability umbrella policy is a policy of "private passenger motor vehicle liability insurance," thereby requiring an

insurer to offer coverage under the umbrella policy for a claim made by a family member in the same amount as the coverage made by a non-family member, pursuant to Ins. § 19–504.1.

As an initial matter, we observe that both appellant and appellee cite to foreign jurisdictions in support of their respective baseline arguments that the umbrella policy is or is not a policy within the meaning of the statute. We find the case law from other jurisdictions to be of limited use because of differences in legal requirements and differences in statutory language. We conclude it is unnecessary to parse those cases, however, because we are able to resolve the question before us by reference to the statute at issue and other Maryland law. We conclude that an umbrella policy is not a policy of private passenger motor vehicle liability insurance and that a household exclusion in an umbrella policy is a valid, contractual term not subject to the requirements of Ins. § 19–504.1.

It is well-settled that [i]n statutory interpretation, our primary goal is always "to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by a particular provision, be it statutory, constitutional or part of the Rules." *Barbre v. Pope*, 402 Md. 157, 172 [935 A.2d 699] (2007); *Gen. Motors Corp. v. Seay*, 388 Md. 341, 352 [879 A.2d 1049] (2005). *See also Dep't of Health & Mental Hygiene v. Kelly*, 397 Md. 399, 419–20 [918 A.2d 470] (2007). We begin our analysis by first looking to the normal, plain meaning of the language of the statute, reading the statute as a whole to ensure that " 'no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory.' " *Barbre*, 402 Md. at 172 [935 A.2d 699]; *Kelly*, 397 Md. at 420 [918 A.2d 470]. *See also Kane v. Bd. of Appeals of Prince George's County*, 390 Md. 145, 167 [887 A.2d 1060] (2005). If the language of the statute is clear and unambiguous, we need not look beyond the statute's provisions and our analysis ends. *Barbre*, 402 Md. at 173 [935 A.2d 699]; *Kelly*, 397 Md. at 419 [918 A.2d 470]; *City of Frederick v. Pickett*, 392 Md. 411, 427 [897 A.2d 228] (2006); *Davis v. Slater*, 383 Md.

599, 604–05 [861 A.2d 78] (2004). If, however, the language is subject to more than one interpretation, or when the terms are ambiguous when it is part of a larger statutory scheme, it is ambiguous, and we endeavor to resolve that ambiguity by looking to the statute's legislative history, case law, statutory purpose, as well as the structure of the statute. *Barbre,* 402 Md. at 173 [935 A.2d 699]; *Kelly,* 397 Md. at 419–20 [918 A.2d 470]; *Smack v. Dep't of Health & Mental Hygiene,* 378 Md. 298, 305 [835 A.2d 1175] (2003). When the statute is part of a larger statutory scheme, it is axiomatic that the language of a provision is not interpreted in isolation; rather, we analyze the statutory scheme as a whole considering the "purpose, aim, or policy of the enacting body," *Serio v. Baltimore County,* 384 Md. 373, 390 [863 A.2d 952] (2004); *Drew v. First Guar. Mortgage Corp.,* 379 Md. 318, 327 [842 A.2d 1] (2003), and attempt to harmonize provisions dealing with the same subject so that each may be given effect. *Bowen v. City of Annapolis,* 402 Md. 587, 613–14 [937 A.2d 242] (2007); *Magnetti v. Univ. of Md.,* 402 Md. 548, 565 [937 A.2d 219] (2007); *Clipper Windpower, Inc. v. Sprenger,* 399 Md. 539, 554 [924 A.2d 1160] (2007). *State of Maryland Central Collection Unit v. Jordan,* 405 Md. 420, 425–26, 952 A.2d 266 (2008) (parallel citations omitted).

At the heart of the issue before us is the interpretation of Ins. § 19–504.1, but before we turn specifically to that section, we will first review the framework relating to compulsory insurance law, household exclusions in automobile liability insurance policies, and public policy considerations.

Preliminarily, we note that during the relevant time period, Maryland Code (2006 Repl.Vol.),[2] § 17–103 of the Transportation Article ("Trans."), provided that all motor vehicle liability insurance policies must provide minimum liability coverage of $20,000 for individual personal injuries, up to a total of $40,000 per accident,[3] and $15,000 for property damage.

---

**2.** The current volume is the 2009 Repl.Vol.

**3.** The 2011 Supplement to the Transportation Article provides that "The security required under this subtitle shall provide for at least: (1) The

As a general rule, parties are free to contract as they wish. *See, e.g., Gardiner v. Gardiner,* 200 Md. 233, 240, 88 A.2d 481 (1952). Insurance companies have a right to limit their liability and to impose whatever condition they please in a policy as long as neither the limitation on liability nor the condition contravenes a State public policy. *See, e.g., Matta v. GEICO,* 119 Md.App. 334, 705 A.2d 29 (1998). Historically, insurers included "household exclusion" clauses in insurance contracts, the purpose of which was

> so obviously to protect the insurer against collusive or cozy claims, to exempt him from liability stemming from one whose natural ties and pulls are likely to favor a claimant who lives in the same household, that the courts have unhesitatingly recognized that purpose and excluded from policy coverage claimants who live in the same household as the named insured.

*State Farm Mut. Auto. Ins. Co. v. Briscoe,* 245 Md. 147, 151, 225 A.2d 270 (1967). Prior to 1972, household exclusions in automobile insurance policies were considered in a number of cases. *See, e.g., Hicks v. Hatem,* 265 Md. 260, 289 A.2d 325 (1972); *Parker v. State Farm Mut. Auto. Ins. Co.,* 263 Md. 206, 282 A.2d 503 (1971); *Briscoe, supra.* Most of the cases considering the household exclusion "dealt with construction and application of the exclusion; its validity was not questioned," because "[a]bsent a statute to the contrary, Maryland followed the general rule, which was to uphold the validity of the exclusion." *State Farm Mut. Auto Ins. Co. v. Nationwide Mut. Ins. Co.,* 307 Md. 631, 516 A.2d 586 (1986) (hereinafter "*State Farm* ").

"Beginning in 1972, however, the General Assembly . . . changed the public policy of this State. . . ." *Jennings v. GEICO,* 302 Md. 352, 357, 488 A.2d 166 (1985). In *Wilson v. Nationwide Mutual Insurance Co.,* 395 Md. 524, 910 A.2d 1122 (2006), the Court of Appeals explained that the landscape

---

payment of claims for bodily injury or death arising from an accident of up to $30,000 for any one person and up to $60,000 for any two or more persons, in addition to interest and costs[.]"

was changed with the advent of "compulsory" automobile liability insurance with required coverages:

Prior to the enactment of § 19–504[4] of the Insurance Article and Title 17 of the Transportation Article, this Court, in a number of cases, had considered exclusions contained within auto insurance policies.

* * *

The enactment of § 19–504 of the Insurance Article and Title 17 of the Transportation Article, however, "substantially changed the public policy of this state with regard to motor vehicle insurance and reparations for damages caused by motor vehicle accidents." Section 19–504 of the Insurance Article and Title 17 of the Transportation Article and related statutes effectively mandated compulsory automobile insurance with required minimum coverages. The Maryland General Assembly enacted the compulsory insurance statutes in an attempt to provide some "recovery for innocent victims of motor vehicle accidents." As the Court of Special Appeals noted ...,

"[a]fter the enactment of the compulsory liability insurance law, certain exclusions commonly found in automobile insurance policies that effectively excluded all liability coverage were held to violate public policy and declared invalid."

*Wilson*, 395 Md. at 529–30, 910 A.2d 1122 (omitting citations and footnotes).

In *Jennings*, following the enactment of the compulsory automobile insurance statutes, the Court of Appeals considered the validity of the household exclusion clause in an automobile liability insurance policy. In that case, Mr. Jennings was a passenger in an automobile owned by him and operated by his stepson, who resided in the same household. *Id.* at 353, 488 A.2d 166. After the vehicle was involved in an accident, and a judgment entered against Mr. Jennings' step-

---

4. Providing that insurance policies shall provide the minimum liability coverage specified in Title 17.

son, Mr. Jennings brought a declaratory judgment action against GEICO, the insurer, seeking a declaration that GEICO was obligated, by virtue of the insurance policy issued to him, to pay the judgment obtained against his stepson. *Id.* at 354, 488 A.2d 166. Mr. Jennings asserted that the household exclusion contained in the policy, excluding all liability coverage for injury to the insured and members of his household, was invalid because it was contrary to the Trans. § 17–103 and Ins. § 19–504. *Id.* at 356, 488 A.2d 166. The Court of Appeals agreed, holding that the household exclusion clause was inconsistent with the public policy adopted by the Legislature in those statutes, which provided for compulsory automobile insurance for all Maryland automobiles with specified required coverages for the "payment of claims for bodily injury or death arising from an accident of up to $20,000 for any one person and up to $40,000 for any two or more persons. . . ." *Id.* at 357–58, 488 A.2d 166. The Court reasoned that the exclusion was contrary to public policy "[b]ecause the stated purpose of [Maryland's compulsory insurance law] is to assure that a driver be insured to a minimum level, [and] such an exclusion provision contravenes the purpose and policy of the ... act." *Id.* at 362, 488 A.2d 166 (citation omitted). Moreover,

> [t]he exclusion of a large category of claimants, suffering bodily injury arising from accidents, is not consistent with [the language of Trans. § 17–103(b)]. . . . [I]f any and all exclusions from this required liability coverage are valid as long as they are not expressly prohibited by statute, the purpose of compulsory automobile liability insurance could be frustrated to a significant extent.

*Id.* at 360, 488 A.2d 166.

Shortly thereafter, in *State Farm,* the Court of Appeals was asked to decide whether the household exclusion, found invalid in *Jennings,* was "wholly invalid, or whether its invalidity extends only to the amount of the minimum liability coverage required by the compulsory insurance law." *State Farm,* 307 Md. at 633, 516 A.2d 586. In that case, Mr. Carroll, who was insured by State Farm, was the passenger in a vehicle owned

by him, but driven by a friend of his, Ms. Glass. *Id.* Ms. Glass drove the vehicle off the road and it overturned, killing Ms. Glass and another passenger, and injuring Mr. Carroll. *Id.* Mr. Carroll sued Ms. Glass's estate. *Id.* at 634, 516 A.2d 586. Ms. Glass had been insured by Nationwide Mutual Insurance Company, and her policy insured her against liability for any accident involving her use of a motor vehicle belonging to someone who, like Mr. Carroll, was not a member of her household. *Id.* at 633–34, 516 A.2d 586. Mr. Carroll's policy included liability coverage of $100,000 per person and $300,000 per accident, and also excluded coverage for injury to "any insured or any member of an insured's family residing in the insured's household." *Id.* The "any insured" portion of that clause was at issue.

Nationwide brought an action against State Farm and Mr. Carroll seeking a declaration that the "household exclusion" in State Farm's policy was void as against public policy. *Id.* at 634, 516 A.2d 586. State Farm argued that the exclusion was valid, and that Nationwide should be declared the primary insurer. *Id.* While the declaratory action was pending, *Jennings* was decided, where the Court determined that a household exclusion that eliminated *all* liability coverage was invalid. *Id.* The question remained, however, whether the exclusion was valid above the statutory minimum requirements. *Id.*

Noting, again, that the purpose of Maryland compulsory insurance statutes is to " '[assure] recovery for innocent victims of motor vehicle accidents,' " *id.* at 639, 516 A.2d 586 (quoting *State Farm Mut. Auto. Ins. Co. v. MAIF*, 277 Md. 602, 604, 356 A.2d 560 (1976)), the Court ultimately concluded that "what the legislature has prohibited," in requiring compulsory insurance, "is liability coverage of less than the minimum amounts required." *Id.* at 637, 516 A.2d 586. In other words, a household exclusion was held to violate public policy only to the extent it operated to prevent the mandatory minimum coverage of $20,000/$40,000. *Id.* at 637, 516 A.2d 586. The Court reasoned that,

[a]s a general rule, parties are free to contract as they wish. A contractual provision that violates public policy is invalid, but only to the extent of the conflict between the stated policy and the contractual provision. The public policy involved here is that all automobile liability policies shall contain bodily injury or death liability coverage in at least the amount of $20,000/$40,000. To permit the "household exclusion" to operate within those limits would be to "deprive injured persons of the protection which the Legislature intended to provide," and would violate public policy. But liability coverage in excess of that minimum is expressly authorized [by statute].

* * *

We hold, therefore, that the "insured" segment of a "household exclusion" clause in an automobile liability insurance policy is invalid to the extent of the minimum statutory liability coverage. So far as the public policy evidenced by the compulsory insurance law is concerned, it is a valid and enforceable contractual provision as to coverage above that minimum.

*Id.* at 643, 516 A.2d 586 (citations omitted). Thus, *State Farm* "invalidated household exclusions that attempted to exclude coverage *below* the statutory minimums, but also validated household exclusions that provided coverage *above* the statutory minimum." *Stearman v. State Farm Mut. Auto. Ins. Co.*, 381 Md. 436, 440, 849 A.2d 539 (2004) (emphasis in original). As the Court in *Wilson* pointed out, "*Jennings* and *State Farm* stand for the principle that, although not explicitly mentioned by the General Assembly, an exclusion can be a valid and enforceable contractual provision as to coverage above the minimum statutory automobile liability insurance amount." 395 Md. at 534, 910 A.2d 1122.

In 2004, in *Stearman,* the Court of Appeals again considered the validity of a household exclusion *beyond* the statutory minimum and reaffirmed *State Farm.* In that case, the automobile insurance policy provided for liability coverage in excess of the $20,000/$40,000 statutory minimum limits. *Id.* at 438, 849 A.2d 539. The issue before the Court was the validity

of a household exclusion that reduced the limit of liability in an automobile insurance policy to the statutory minimum amount, even though the policy otherwise provided liability coverage in excess of the statutory minimum liability limits. *Id.*

Mrs. Stearman suffered injuries as a result of an accident that occurred while she was a passenger in a vehicle driven by her husband, and sued State Farm and her husband, seeking a declaration that the household exclusion in State Farm's automobile liability insurance policy was invalid. *Id.* The trial court declared the exclusion valid, and accordingly reduced liability coverage from the stated policy amount of $100,000 per person to the statutory limit of $20,000 per person. *Id.* at 440, 849 A.2d 539. On appeal, the Stearmans argued that *Jennings* and *State Farm* should be overruled, asserting that the abrogation of interspousal immunity changed public policy. *Id.* at 450, 849 A.2d 539. The Court concluded, however, that in the absence of statutory authority, there was no basis to strike down the household exclusion. The Court observed that the "public policy that the Stearmans urge us to change now is not a policy that has been developed by the courts through common law. Rather, it was an act of the Legislature that created the policy, and ordinarily only an act of the Legislature can change that policy." *Id.* at 454, 849 A.2d 539. "We will not invade the province of the General Assembly and rewrite the law for them, no matter how just or fair we may think such a new law or public policy will be." *Id.* "The refusal of the Legislature to act to change a *legislatively* enacted public policy (as opposed to a common law one) provides even greater support for the Court to exercise restraint and refuse to step in and make the change, unless constitutional violations." *Id.* at 455, 849 A.2d 539. Thus, in the absence of a legislatively enacted public policy to the contrary, the Court concluded that household exclusion clauses extending beyond mandatory minimums were valid:

> It is clear from the *Jennings* and *State Farm* cases that the invalidity of household exclusion clauses in motor vehicle insurance policies is based entirely upon the specific statutory provision mandating motor vehicle insurance, requiring

particular coverages at specified minimums, authorizing some exceptions and exclusions, and generally not authorizing other exclusions from the required coverages. *Jennings* and *State Farm* do not support, and in fact reject, the notion that there is a public policy hostile to household exclusion clauses which extends beyond the scope of the statutorily required insurance coverages.

*Stearman,* 381 Md. at 455, n. 14, 849 A.2d 539 (quoting *Allstate Ins. v. Hart,* 327 Md. 526, 532–33, 611 A.2d 100 (1992)).

The *Stearman* Court recognized, however, that the General Assembly had made attempts "in the recent past to make the change the Stearmans urge us to make now," observing:

Every year since 2000, legislators have introduced bills in the General Assembly that would require insurance companies to offer insured liability coverage for claims made by a family member in the same amount as the liability coverage purchased for claims made by a nonfamily member. None of these bills were enacted until this year, when the Governor signed Senate Bill 460 [Ins. § 19–504.1] into law. This further evidences that the Legislature has recognized a need to act in this area and has chosen to do so.

*Stearman,* 381 Md. at 455–56, 849 A.2d 539 (footnote omitted). The Court noted that *Stearman* was not affected by Ins. § 19–504.1, as the law only applied to policies issued, delivered, or renewed on or after January 1, 2005.

To reiterate succinctly, the evolution of public policy changes with regard to household exclusions was as follows. Initially, based on general contract principles, household exclusion provisions were generally accepted and aimed at protecting the insurer against collusive claims. After *Jennings* and *State Farm,* household members were allowed recovery up to the compulsory minimum mandated by the Legislature. By mandating compulsory minimums, the Legislature intended that innocent victims of motor vehicle accidents be permitted to recover for their injuries, with very few exclusions, and regardless of their household status. *Stearman* expressly

held that household exclusions reducing the amount of liability to the statutory minimum, where the policy otherwise provided coverage in excess of the minimum, were valid, in the absence of the Legislature acting to change the public policy. Contemporaneously with the Court's decision in *Stearman,* however, and as *Stearman* recognized, the Legislature did enact Ins. § 19–504.1, the lynchpin of the present case, which requires an insurer to *offer* a policy of "motor vehicle liability insurance coverage" for claims made by family members in the same amount as for claims made by non-family members. We now turn to the statute at issue on this appeal.

Section 19–504.1 falls under Article 19, Subtitle 5 is, which is entitled *"Motor Vehicle Insurance—**Primary Coverage.**"* (Emphasis added). Section 19–504.1 provides:

**Coverage for claims of family members.**

(a) *Applicability.*—This section applies only when the liability coverage under a policy or binder of private passenger motor vehicle liability insurance exceeds the amount required under § 17–103 of the Transportation Article.

(b) *In general.*—An insurer shall offer to the first named insured under a policy or binder of private passenger motor vehicle liability insurance liability coverage for claims made by a family member in the same amount as the liability coverage for claims made by a nonfamily member under the policy or binder.

(c) *Form.*—(1) An offer made under this section shall be made on the form that the Commissioner requires.

(2) The form may be part of the insurance application, policy, contract, or binder.

(3) The form shall clearly and concisely explain in 10 point boldface type:

(i) the nature, extent, benefit, and cost of the amount of liability coverage for claims made by family members that is available to the first named insured; and

(ii) that an insurer may not refuse to underwrite a first named insured because the first named insured requests or elects the liability coverage for claims made by family

members in an amount equal to the coverage provided for claims made by nonfamily members.

(d) *Prohibitions against insurers.*—(1) An insurer may not refuse to underwrite a first named insured because the first named insured requests or elects the liability coverage for claims made by family members in an amount equal to the coverage provided for claims made by nonfamily members.

\* \* \*

(Emphasis added). As pointed out previously, the minimum requirements under Trans. § 17–103 at the time of the accident were $20,000/$40,000.[5]

As noted above, based on public policy, case law declared invalid a household exclusion that would prevent liability coverage for less than the mandatory minimum proscribed by the Legislature. Following the decisions in the foregoing cases, the Legislature enacted Ins. § 19–504.1 to ensure that, when obtaining a policy of private passenger motor vehicle liability insurance with limits in excess of the statutory minimum, the insured would have a right to obtain that policy without a household exclusion. The question remains, however, whether the right to obtain a policy without the exclusion extends beyond a primary motor vehicle liability policy to encompass an umbrella policy.

Appellant asserts that *Popham v. State Farm Mut. Ins. Co.,* 333 Md. 136, 634 A.2d 28 (1993) is dispositive, and answers that question in the affirmative. Appellant also asserts, in essence, that any policy providing, even in part, motor vehicle liability insurance falls under the statute. We disagree with appellant with respect to both assertions and, observing that it would be a colossal leap to consider the Legislature's expansion of the right to obtain insurance above the mandatory minimum without a household exclusion as encompassing *any* insurance policy, conclude that a policy of "private passenger

---

**5.** *See* n. 1, *supra.*

motor vehicle liability insurance" does not include umbrella policies.

It is worth noting that the Legislature has never stated a public policy that would compel insurers to provide coverage in excess of the mandatory minimums. The Legislature also has not prohibited it. Pursuant to Ins. § 19–502(b), subtitle 5 does not "prevent[ ] an insurer from issuing, selling, or delivering motor vehicle liability insurance policies that provide liability coverage in excess of the requirements of the Maryland Vehicle Law." [6] Putting aside Ins. § 19–504.1 for the moment, the relevant expressions of public policy are as follows. When an insurer issues a primary liability policy, it must contain certain coverages, and when issued with limits in excess of the statutory minimum, the policy must meet certain requirements. *See* Trans. §§ 17–103(b)(3) and (b)(4), which, in addition to the compulsory insurance requirement under Trans. §§ 17–103(b)(1) and (b)(2), requires primary motor vehicle insurance policies to provide, unless waived, personal injury protection of at least $2,500 to cover medical, hospital, and disability expenses for the insured, family members, guests and authorized users without regard to fault, Ins. § 19–505, and protection against damages caused by persons operating uninsured motor vehicles, Ins. § 19–509. With respect to uninsured motor vehicles, at one time, insurers issuing liability policies with limits in excess of statutory minimums, had to offer to the insured uninsured motor vehicle coverage equal to the liability limits otherwise available under the policy, see *infra*, but since 1992, policies must contain a limit for uninsured motor vehicle coverage at least equal to the statutory minimum limits and also equal to the amount of liability coverage otherwise available under the policy, the latter subject to waiver by the insured. Ins. § 19–509(c) and (e). By case law, a household exclusion in a motor vehicle

---

**6.** The Maryland Vehicle Laws are found in Title 11 through Title 27 of the Transportation Article. We are only concerned here with the requirements found in Title 17.

liability insurance policy is invalid to the extent of statutory minimum limits.

The public policy considerations leading up to the enactment of the statute, as well as the text of other sections in the subtitle, support our conclusion that the Legislature intended Ins. § 19–504.1 to apply only to primary policies.

In *Popham,* a passenger was injured in a vehicle involved in a one car accident. 333 Md. at 138, 634 A.2d 28. The driver of the vehicle had coverage through MAIF with liability limits of $20,000/$40,000. *Id.* at 139, 634 A.2d 28. The passenger was additionally insured with State Farm under two policies: one provided uninsured motorist coverage in the same amount as its liability coverage, i.e., $100,000/$300,000, and the other, an "excess" personal liability insurance policy, provided liability coverage of $1,000,000, but no uninsured motorist coverage. *Id.* The passenger sued State Farm, seeking a declaration that, pursuant to Art. 48A, § 541(c) (now Ins. § 19–509), State Farm had to offer, in its excess policy, uninsured motorist coverage in the same amount as the liability coverage it provided. *Id.* At that time, the statute provided that an insurer, when issuing a policy of motor vehicle liability insurance, had to offer in writing the opportunity to contract for a limit of uninsured motor vehicle coverage equal to the liability limit under the policy, if higher than the statutory minimum limits. *Id.* at 145, 634 A.2d 28; Art. 48A, § 541(c)(2). The statute also provided that excess policies "may include uninsured motorist coverage as provided in subsection (c) of this section." *Id.* at 146, 634 A.2d 28; Art. 48A, § 541(f). The circuit court found that, with respect to an excess policy providing motor vehicle liability coverage, the Legislature, by enacting section Art. 48A, § 541(f) (now Ins. § 19–509(h)(1)), either intended that the excess policy was not a motor vehicle liability insurance policy or that it was excluded or exempted from the requirements of Art. 48A, § 541(c)(2) (now Ins. § 19–509).[7] *Id.* at 146, 634 A.2d 28.

---

7. Art. 48A, § 541(c)(2), was amended on several occasions and some portions repealed.

The Court of Appeals granted certiorari, and held that Art. 48A, § 541(f), the current Ins. § 19–509(h)(1), "permits, but does not require, the excess insurer to offer uninsured motorist coverage." *Id.* at 152, 634 A.2d 28. The Court recognized that the appellants contended that umbrella policies providing motor vehicle liability coverage fell within the definition of a motor vehicle liability insurance policy, and that the appellees did not accept that an umbrella policy is a motor vehicle liability insurance policy, *id.* at 147, 634 A.2d 28, but "left for another day," the resolution of that issue. *Id.* at 152, 634 A.2d 28. The Court stated that, regardless of the reach of Art. 48A. § 541(c)(2), by virtue of Art. 48A, § 541(f), the Legislature clearly intended that the statutory requirement to offer higher limits did not apply to excess policies. *Id.* at 152, 634 A.2d 28. As *Popham* did not decide the issue before us either way, concerned uninsured motorist coverage as opposed to the liability coverage at issue here, and did not involve the applicability of a household exclusion, it is not dispositive of the present case.

Consistent with her reliance on *Popham,* however, appellant directs us to a portion of the uninsured motorist statute, Ins. § 19–509(e)(2), to support her position that a private passenger motor vehicle liability policy encompasses an umbrella policy. Subsection (e)(1) provides that a motor vehicle liability insurance policy contain uninsured motor vehicle coverage at least equal to the statutory minimum, and (e)(2) provides that, unless waived, the limit of uninsured motor vehicle coverage must equal the amount of liability coverage otherwise provided under the policy. According to appellant, because the umbrella policy in this case included an endorsement for uninsured motorist coverage in the same amount as the liability coverage, i.e., $2,000,000, appellee, "intentionally or not," complied with the plain meaning of the "statute that applies to private passenger motor vehicle liability insurance in issuing its standard [u]mbrella [p]olicy." Appellant observes that the Legislature distinguished between "underlying motor vehicle policies and umbrella policies in the uninsured motorist statute, and chose not to do the same thing" in Ins. § 19–504.1, and

argues that that means that Ins. § 19–504.1 "must be read to include all motor vehicle policies, including umbrella policies that protect against loss incurred through the use of an automobile."

As noted above, section 19–509(h)(1), *"[c]overage under other policies ..."* provides, however, that a "policy that, as its primary purpose, provides coverage in excess of other valid and collectible insurance ... *may* include the uninsured motorist coverage provided for in this section." (Emphasis added). Thus, in an umbrella policy, an insurer is permitted, but not required, to offer uninsured motorist coverage. That appellee offered appellant uninsured motorist coverage in the same amount as liability coverage in the umbrella policy is coincidental. Appellee was not required to do so, and contrary to appellant's observation, the fact that the Legislature expressly addressed umbrella policies in the uninsured motorist statute, and not in Ins. § 19–504.1, does not lead to the conclusion that the household "exclusion must be read to include all motor vehicle policies, including umbrella polices." Indeed, the language in subsection § 19–509(h)(1) would have been inconsistent with § 19–509(e)(2) if the Legislature had intended that § 19–509(e)(2) covered excess or umbrella policies. The language in (h)(1) simply recognized that parties were free to contract for greater coverage in an umbrella policy beyond that which is required in a primary policy. Section 19–504.1 simply provides for the mandatory offering of higher uninsured motor vehicle limits under a primary policy in the event the limits of liability have been increased beyond what Trans. § 17–103 requires.

The above analysis is consistent with the nature of the policies in question. The coverage under a policy of "private passenger motor vehicle liability insurance" focuses on the scheduled motor vehicles, which is also the focus of the mandatory insurance requirements. The coverage under an umbrella policy focuses on the insured. Based upon the foregoing, we conclude that Ins. § 19–504.1 does not apply to excess or umbrella policies.

JUDGMENT AFFIRMED. COSTS TO BE PAID BY
APPELLANT.